UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 1:20-CR-743-01 |
| | § | |
| BALTAZAR REYES-HERRERA | § | |

## ORDER AND OPINION

The United States detained Defendant Baltazar Reyes-Herrera after finding controlled substances in the tractor-trailer he drove through the government checkpoint near Sarita, Texas. He moves to suppress information that law enforcement officers obtained from his cell phones, statements he made to an agent at the checkpoint (and any information constituting the fruit of those statements), and statements he made to an intake officer at the Coastal Bend Detention Center. (Motion, Doc. 39; Second Motion, Doc. 64) He primarily argues that the interrogating agent at the checkpoint made false promises to induce Reyes into signing written waivers, so Reyes did not voluntarily consent to the search of his cell phones or to waive his *Miranda* rights before speaking to the agent.

Based on the record and the applicable law, the Court concludes that Reyes knowingly and voluntarily signed the written consent for law enforcement to search his cell phones, as well as the waiver of his *Miranda* rights. As a result, the Court finds that no grounds presented in the Motion support suppressing the indicated statements and information.

### I. Relevant Facts[1]

In October 2020, Reyes arrived at the United States Border Patrol Checkpoint near Sarita, Texas driving a semi-tractor trailer. After a K-9 officer alerted to the truck, agents found narcotics in the real axle area known as the "differential", and they placed Reyes into custody. Two DEA

---

[1] The Court bases these facts on the record, including the documentation attached to the Government's Response (Doc. 56) and the video of the agent's interrogation of Reyes at the checkpoint. The referenced quotes are from the Court's review of the recordings and do not represent an official transcript. Still, the Court finds the audio sufficiently clear to conclude that the statements in this Order and Opinion accurately represent the statements that Special Agent Robert LaRock and Reyes made during the encounter.

1 / 11

agents, including Special Agent Robert LaRock questioned him. The conversation began with about 20 minutes of biographical inquiries and confirmation of Reyes's possessions, which included two cell phones. (Tape 0000, 00:00—17:30) Agent LaRock confirmed that Reyes could read in English, and Reyes read aloud a form about the return of his property. (*Id.* at 18:00—19:40)

Agent LaRock then asked Reyes to consent to a search of his cell phones without a warrant. Agent LaRock clarified the purpose for the search: "I don't want your property. I am just here for the investigation. You have a couple of cell phones. I'm asking for your permission to look at the cell phones to make sure there is no evidentiary value for the DEA." (*Id.* at 28:00—28:10) At Agent LaRock's request, Reyes read aloud the written consent form. (*Id.* at 28:10—29:30) The statements on the document confirmed that Reyes had "the right to refuse to consent to the search" and that no threats were made to obtain his consent. (*Id.* at 29:08—29:30) When Agent LaRock asked if Reyes would sign the document, Reyes responded that he had "personal stuff" on the cell phones. (*Id.* at 29:30—29:37) Agent LaRock responded that he was "not interested in [Reyes's] personal stuff", and repeated that Reyes had a "100% right to tell me no, and I will get a search warrant". (*Id.* at 29:40—29:50) Agent LaRock then stated, "I don't want your property. I want to give it back as soon as possible. Either way you're not wrong." (Tape 0001, 00:00—00:10)

At this point, Agent LaRock shifted topics and explained that he wanted to "tell you a couple ways to help yourself", which included Reyes accepting responsibility, cooperating, and through substantial cooperation. (Tape 0001, 00:9—01:05) He described the process: Reyes would be arrested, placed in detention, have an initial appearance, and then have a bond hearing. (Tape 0001, 01:05—01:40) Agent LaRock continued:

> I'm not going to lie to you when I tell you that I'm here to help you. I know this is not your organization. I am truly here to help you. The information you provide helps you when it comes to court. It can also lessen your time that you spend in prison at sentencing. Does that make sense? The first step, we know everybody communicates by cell phone. The information you provide to me, I don't go tell the bad guys. OK? That's information between me and my partner and you. OK? I'm not going to call these guys up and say "Hey! Baltazar told me what you guys

> are up to. You might as well just give up now." That's not how it works. OK? It's a slow, long process. I like to say I'm the collector of information. I collect your information. You're not the only person that has ever sat in that chair. I collect everybody's information. So, you're just kind of a starting point.

(*Id.* at 01:50—03:00) Agent LaRock then returned to the issue of the written consent to search the cell phones without a warrant:

> My job is to come down here to find out what you know. Not to find out what you know and tell the people that you work for. I don't even know who you work for. OK? The first step is, what I'm asking though, is the consent to look through the phone. You have the 100% absolute right to tell me no and to obtain a search warrant. And I will. I've heard that excuse—I have lots of personal information in there. I got some naked pictures of me and my girl. I don't care. That's not why I want to look through your phone. People use that all the time. Believe me, that doesn't become public record. Not everybody in the world is going to look at your personal stuff. We do not care about that. That's not why we're here.

(*Id.* at 03:50—04:30) At this point, Reyes indicated that he would sign the written consent, and Agent LaRock proceeded to walk him through the signature of the document. (*Id.* at 04:30–05:05) (The Court will refer to the signed document as the Cell Phone Consent.)

Agent LaRock next turned to the issue of Reyes's *Miranda* rights. He handed Reyes a document listing Reyes's rights under *Miranda* in short statements:

- "You have the right to remain silent."

- "Anything you say can be used against you in court."

- "You have a right to talk to a lawyer for advice before we ask you any questions."

- "You have the right to have a lawyer with you during the questioning."

- "If you cannot afford a lawyer, one will be appointed to you before any questioning if you wish."

(*Id.* at 05:40—06:35). Agent LaRock slowly read each statement aloud, confirmed that Reyes understood the statement, and had Reyes initial the statement to confirm his understanding. (*Id.* at 05:40—06:35) After repeating this process for each statement, Agent LaRock asked, "Do you understand your rights?" (*Id.* at 06:35—36) Reyes responded "yes" and initialed the form. (*Id.* at 06:35—06:40)

Agent LaRock next asked Reyes if he would answer some questions, and Reyes agreed to do so. (Id. at 06:40–06:55) Agent LaRock directed Reyes to another section of the document, which Reyes read aloud: "I have read, or someone has read to me, this advice of rights and I understand what my rights are. At this time, I am willing to freely and voluntarily answer questions without a lawyer present." *(Id.* at 06:55—07:10*)* Agent LaRock asked Reyes to mark that someone had read him his rights and to sign the form, which Reyes did. (*Id.* at 07:10—07:25) (The Court will refer to this signed document as the *Miranda* Waiver.)

Agent LaRock proceeded to question Reyes. Both before and after the signing of the Cell Phone Consent and the *Miranda* Waiver, Reyes appears attentive and at ease. The conversation between Agent LaRock and Reyes never becomes heated or charged, and Agent LaRock's physical demeanor and conduct does not suggest an attempt to intimidate Reyes.

After Agent LaRock completed his interrogation, law enforcement transported Reyes to the Coastal Bend Detention Center in Robstown, Texas, where Intake Officer Albert Chavarria posed questions to Reyes as part of the intake process. Officer Chavarria testified at the suppression hearing, but confirmed only that he had no recollection of having booked an individual named Baltazar Reyes-Herrera, that he could not recognize anyone in the courtroom who he recalled appearing before him at the Detention Center, and that he did not even know whether he was on duty on the date in question.

## II. Analysis

Reyes's Motion challenges information that the Government obtained through at least two legally-distinct events: first, the search of his cell phones after Reyes signed the Cell Phone Consent; and second, statements that Reyes made after he signed the *Miranda* Waiver. In his Motion, Reyes does not consistently distinguish between these two events, coupling them together in his argument. Although courts apply similar standards to cell phone searches and the waiver of *Miranda* rights, the analysis can differ. As a result, for purposes of the Motion, the Court will consider them as distinct issues.

Reyes argues that he did not voluntarily agree to the search of his cell phones or to provide statements to law enforcement without an attorney present. In support of his position, he contends that various statements made by Agent LaRock before Reyes signed the Cell Phone Consent and the *Miranda* Waiver rendered his signatures involuntary. In particular, Reyes highlights five of Agent LaRock's alleged statements:

- "I'm here to help you."
- "I can't help you if you don't help yourself."
- "I don't want you to get in any more trouble than you're in."
- "Info you provide helps you."
- "What is said here, stays here."

(Motion, Doc. 39, 3—5)[2]

As an initial matter, the Court finds that the following paragraphs contain Agent LaRock's relevant statements, with the bolded portions constituting the challenged utterances:

> I'm not going to lie to you when I tell you that **I'm here to help you**. I know this is not your organization. **I am truly here to help you. The information you provide helps you when it comes to court.** It can also lessen your time that you spend in prison at sentencing. Does that make sense? The first step, we know everybody communicates by cell phone. **The information you provide to me, I don't go tell the bad guys. OK? That's information between me and my partner and you.** OK? I'm not going to call these guys up and say "Hey! Baltazar told me what you guys are up to. You might as well just give up now." That's not how it works. OK? It's a slow, long process. I like to say I'm the collector of information. I collect your information. You're not the only person that has ever sat in that chair. I collect everybody's information. So, you're just kind of a starting point.
>
> \* \* \*
>
> My job is to come down here to find out what you know. Not to find out what you know and tell the people that you work for. I don't even know who you work for. OK? The first step is, what I'm asking though, is the consent to look through the phone. You have the 100% absolute right to tell me no and to obtain a search

---

[2] Reyes also contends that Agent LaRock referenced Reyes's probable deportation: "You'll be darn lucky to stay. . . I can't help you if you don't help yourself". (Motion, Doc. 39, 7) According to Reyes, this statement constitutes a promise and a threat that invalidate the written waiver. (*Id*.) However, based on the Court's review of the videotaped interrogation, Agent LaRock did not make such a statement or any similar statement to Reyes. In any event, even if Agent LaRock had made such a statement, the Court finds that it would not have amounted to a threat or a promise that would render Reyes's signatures on the documents at issue involuntary or coerced.

> warrant. And I will. I've heard that excuse—I have lots of personal information in there. I got some naked pictures of me and my girl. I don't care. That's not why I want to look through your phone. People use that all the time. Believe me, that doesn't become public record. Not everybody in the world is going to look at your personal stuff. We do not care about that. That's not why we're here.

(*Id.* at 01:50–03:50) Based on the Court's review of the recorded interrogation, the Court finds that Agent LaRock did not tell Reyes, "What is said here, stays here", although he did say, "The information you provide to me, I don't go tell the bad guys. OK? That's information between me and my partner and you."

### A. Search of the Cell Phones

For the United States government to search an individual's cell phone without a warrant, the individual must freely and voluntary consent, and the Government must prove by a preponderance of the evidence that the defendant gave such consent. *United States v. Perales*, 886 F.3d 542, 546 (5th Cir. 2018) (internal quotations omitted). A court determines whether consent was free and voluntary, or instead the product of duress or coercion, from the totality of the circumstances. *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). The court considers six factors, of which "no single factor is dispositive": "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." *Id.*

A court's consideration of the totality of the circumstances is at times unnecessary under the inevitable discovery doctrine. That doctrine "renders the exclusionary rule inapplicable to otherwise suppressible evidence if that evidence would inevitably have been discovered by lawful means." *United States v. Jackson*, 596 F.3d 236, 241 (5th Cir. 2010). "The inevitable discovery rule applies if the Government demonstrates by a preponderance of the evidence that (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct and (2) the Government was actively pursuing a substantial

alternate line of investigation at the time of the constitutional violation." *Id.* The doctrine places the police in the "same, not a worse, position" than if no misconduct occurred. *Id.* at 242 (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984)). In short, if the inevitable discovery doctrine applies, it does not matter whether the defendant voluntarily consented to the search of his cell phone. *See id.* at 240—42 (not reaching other grounds for denying the motion to suppress because the evidence was admissible under the inevitable discovery doctrine; citing other Fifth Circuit cases that did not consider whether a search was illegal because the inevitable discovery doctrine applied); *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005) ("We need not decide whether [the defendant's] consent was voluntary, however, because we conclude the inevitable discovery doctrine clearly applies here and supports the denial of [the defendant's] motion to suppress.").

In the current matter, the Court finds that the inevitable discovery doctrine applies and renders unnecessary a consideration of the totality of the circumstances regarding Reyes's signing of the Cell Phone Consent. Agent LaRock correctly informed Reyes that if needed, Agent LaRock could obtain a warrant to search the cell phones. Law enforcement took Reyes into custody after finding controlled substances in the tractor-trailer that he was driving, at a checkpoint where law enforcement routinely uncovers drug trafficking. Magistrate judges issue warrants to search cell phones if a law enforcement officer demonstrates, by oath or affirmation, that "a 'fair probability' or a 'substantial chance' that evidence relevant to [the] crime . . . will be found in each place to be searched: [] contacts, [] call logs, [] text messages, and [] photographs." *United States v. Morton*, 984 F.3d 421, 427 (5th Cir. 2021). The facts in this case easily satisfy this standard. *See id.* (concluding a simple drug possession charge supported a search of contacts, call records, and text messages). In addition, when the agents at the checkpoint searched Reyes's cell phones, they were actively investigating Reyes, were about to arrest him, and had stated an intention to obtain a search warrant if he did not sign the written consent. This conduct demonstrates active pursuit.[3]

---

[3] The *Jackson* court questioned, but did not reach, whether the applicable standard continues to require active pursuit.

As a result, irrespective of whether Agent LaRock's statements rendered Reyes's signing of the Cell Phone Consent involuntary, the inevitable discovery doctrine nevertheless precludes suppression of the information that the Government obtained from the search of Reyes's cell phones.

B.  **Statements made to Agent LaRock and the Fruits of those Statements**

A "defendant's waiver of his *Miranda* rights is effective only if voluntary." *United States v. Cardenas*, 410 F.3d 287, 292 (5th Cir. 2005). Determining whether a valid waiver has occurred "has two distinct dimensions." *Id*. "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. at 293 (internal quotations omitted). Whether a defendant voluntarily relinquished his *Miranda* rights is made "on a case-by-case basis and is viewed under the totality of the circumstances surrounding the interrogation." *Id*. "A crucial aspect is the presence or absence of coercive behavior on the part of the government." *Id*.

Reyes contends that Agent LaRock's statements rendered the written waiver of his *Miranda* rights involuntary. Based on the totality of the circumstances, however, the Court concludes that Reyes knowingly and voluntarily waived his *Miranda* rights before answering Agent LaRock's questions without the presence of an attorney. As an initial matter, Reyes does not contest that he signed the *Miranda* Waiver. That document contained a full recitation of his *Miranda* rights, including that he had a right to remain silent and a right to counsel, and that any statements that he made could be used against him. Agent LaRock walked Reyes through each statement, with Reyes initialing each separate statement immediately after having it read to him. In addition, after reviewing each statement individually, Agent LaRock asked Reyes if he

---

*See United States v. Jackson*, 596 F.3d 236, 242 (5th Cir. 2010) ("[W]e need not address the continuing vitality of the active-pursuit element, as an ongoing grand jury investigation that has already led to an indictment would clearly satisfy it."). The Court finds that to the extent that the Government must demonstrate active pursuit, it has done so here.

understood his rights, and Reyes signed the written waiver to confirm that he did.

Reyes argues that Agent LaRock's statements coerced or deceived him into signing the waiver by making false promises and making statements contradicting his *Miranda* rights.  The Court disagrees.  The statement by Agent LaRock that comes closest to constituting deception is the following: "The first step, we know everybody communicates by cell phone.  The information you provide to me, I don't go tell the bad guys.  OK?  **That's information between me and my partner and you.**" (Tape 0001, 02:14—02:30 (emphasis added))  The final sentence, when viewed in isolation, is inconsistent with the *Miranda* warning that anything an individual says can be used against him.  But context matters.  And in this context, Agent LaRock's statement is unquestionably related to Reyes's concern that information on his cell phones could be relayed to other individuals involved in any alleged drug trafficking.  Agent LaRock explained, "I'm not going to call these guys up and say "Hey!  Baltazar told me what you guys are up to.  You might as well just give up now."  Moments later, he repeated, "My job is to come down here to find out what you know.  Not to find out what you know and tell the people that you work for."  Reyes then signed the Cell Phone Consent, after which a natural break occurred in the conversation.  Only after this moment did Agent LaRock proceed to walk Reyes through the *Miranda* Waiver.  While the discussion of the Cell Phone Consent and the *Miranda* Waiver were temporarily close in time, the tenor and pace of the interrogation naturally separated the discussion of each document.  Considering the totality of the circumstances, Agent LaRock's statement most reasonably can be construed as a reassurance that the Government would not disclose Reyes as a source to any contact found on Reyes's cell phones.  At most, the statement represented a promise to not share information contained in Reyes's cell phones with anyone.  While such a broad statement would be inconsistent with the Government's use of the information on the cell phones, the statement was *limited* to the cell phones.  Given the nature of the interrogation, it is unreasonable to conclude that Reyes understood Agent LaRock's statement as a promise inconsistent with the *Miranda* warnings that he subsequently reviewed in detail.  As a result, this statement made in

connection with the Cell Phone Consent did not render Reyes's signature of the *Miranda* Waiver involuntary.

The remaining statements by Agent LaRock that Reyes highlights also do not undermine Reyes's signature of the *Miranda* Waiver. As a general proposition, law enforcement can inform individuals about their ability to cooperate and to obtain benefits within the legal system by accepting responsibility and providing information. Doing so does not constitute coercion that renders a written waiver of *Miranda* rights involuntary. *See e.g.*, *United States v. Cardenas*, 410 F.3d 287, 295 (5th Cir. 2005) ("The agents also encouraged her to cooperate with the government as a witness. We have never held that these sorts of customary police tactics constitute such gross intimidation or coercion so as to overcome a defendant's free will and render his statements inadmissible."). Agent LaRock's statements concerning Reyes's ability to help himself by cooperating, providing information, and accepting responsibility fall well within the parameters of permissible conduct.

Reyes submits a list of authorities to support his position, but they are readily distinguishable. For example, some of the cases concern clear examples of physical coercion. *See, e.g.*, *United States v. Perdue*, 8 F.3d 1455 (10th Cir. 1993) (involving a defendant forced out of his car at gunpoint by officers); *United States v. McCullah*, 87 F.3d 1136 (10th Cir. 1996) (involving an officer who threatened to kill the defendant unless he provided information). Here, Reyes does not contend that Agent LaRock used such coercive tactics. The other cases that Reyes cites are similarly inapplicable to the current case. *See e.g., United States v. Preston*, 751 F.3d 1008, 1027 (9th Cir. 2014) (concluding that the intellectually disabled are "more susceptible" to deceptive tactics); *United States v. Barnes*, 713 F.3d 1200, 1202 (9th Cir. 2013) (concerning *Miranda* warnings provided *after* the defendant's incriminating statements); *United States v. Walton*, 10 F.3d 1024, 1027 (3d Cir. 1993) (involving an officer's reassurance to his friend, the defendant, that he could speak "off the cuff", in contradiction to the *Miranda* warning read to the defendant the previous day by other law enforcement agents).

Based on the totality of the circumstances, the Court concludes that Reyes's signing of the *Miranda* Waiver was knowing and voluntary, and not the result of coercion, deception, or false promises.

### C. Statements made to the Intake Officer

Reyes also moves to suppress alleged statements he made to an Intake Officer at the Coastal Bend Detention Center. At the suppression hearing, however, the Intake Officer testified that he did not remember Reyes or any statements that he may have made. Given the Intake Officer's lack of personal knowledge regarding Reyes, the Court finds the Motion as to this issue moot.[4]

## III. Conclusion

Accordingly, it is:

**ORDERED** that Defendant Baltazar Reyes-Herrera's Supplemental Annotated Motion to Suppress Defendant's Statements while under Arrest without Warrant at Sarita (Javier Vega, Jr.) Checkpoint on October 20, 2021, and to Suppress Evidence Derived from Involuntary Statement while under Arrest without a Warrant (Doc. 39) is **DENIED**; and

**ORDERED** that Defendant Baltazar Reyes-Herrera's Supplemental Annotated Motion to Suppress Defendant's Statements while under Arrest without Warrant at Sarita (Javier Vega, Jr.) Checkpoint on October 20, 2021, and to Suppress Evidence Derived from Involuntary Statement while under Arrest without a Warrant (Doc. 64) is **DENIED.**

Signed on May 13, 2021.

_Fernando Rodriguez, Jr._
Fernando Rodriguez, Jr.
United States District Judge

---

[4] The parties suggested that the Intake Officer may have mentioned the alleged conversation with Reyes to another Government employee, who included Reyes's alleged statements in a government form or report. To the extent that such a writing exists, it would be based on hearsay. In any event, if the Government seeks to introduce such a statement at trial, Reyes may re-urge his motion to suppress as to any such alleged statement.